51 Cal.Rptr.3d 448 (2006)
144 Cal.App.4th 1339
In re P.A. et al., Persons Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
B.A., Defendant and Appellant.
No. B189808.
Court of Appeal of California, Second District, Division Three.
October 25, 2006.
As Modified November 21, 2006.
*449 Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.
Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, Frank J. DaVanzo, Deputy County Counsel for Plaintiff and Respondent.
KLEIN, P.J.
B.A. (father) appeals an order of the juvenile court adjudging his three minor children dependents under Welfare and Institutions Code section 300, subdivisions (b) and (d), and ordering father to participate in family reunification services.[1] On appeal, father contends the evidence was insufficient to support the allegation that father sexually abused his nine-year old daughter, P.A., or the juvenile court's finding that P.A.'s male siblings were at risk of harm.[2] We reject these claims and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND
On October 21, 2005, the Department filed a petition alleging that (1) mother and father had exposed the children to incidents of domestic violence and, on at least one occasion, father pushed and shoved mother, and (2) father had sexually abused P.A. by touching her vagina under her clothes and on top of her underwear and that such conduct placed P.A. and her two brothers at risk of harm and sexual abuse.
The detention report indicated that on October 18, 2005, a social worker responded to a call from the Los Angeles police department to investigate allegations that father had sexually abused P.A. P.A. told the social worker that father molested her on two occasions. The first time, she was asleep but awoke when father placed his hands inside her panties and rubbed her vaginal area. The second time, P.A. was awake because she was too afraid to sleep. P.A. did not tell her mother about these incidents because she did not want to start an argument.
Mother told the social worker that she and father had a very good relationship until mother learned father had a child outside of their relationship. Mother believes father is still involved with the mother of the child because he often leaves on Friday and returns on Monday. Father claims he is spending time with the six-year-old child. Arguments between mother and father have become more frequent and escalate into physical aggression. Two weeks earlier, father pushed mother during an argument in the presence of the *450 children. Mother expressed the belief that father had not molested P.A. and indicated P.A. would have reported such conduct to mother. Mother believed P.A. may have falsely accused father because she was angry with him for disciplining her.
Father admitted he pushed mother during an argument and agreed to move from the home so the children could remain with mother. Father denied molesting P.A. and indicated he recently had chastised her for being outside after dark and P.A. took exception to being corrected in front of her friends.
A social report prepared for November 30, 2005, included statements P.A. made to a social worker on November 11, 2005. In that interview, P.A. indicated her father regularly woke her during the night to cover her with a blanket. Regarding the first incident of molestation, P.A. said father touched her on top of her clothes in her private area and under her clothes on top of her underwear. P.A. indicated her mother may have been in the bathroom during this incident. P.A. told her mother that if father returned to the home, she wanted a room with a lock to keep father out. P.A. cried during the interview.
P.A.'s brother, F.A., told the social worker he had heard his parents arguing and heard mother calling father names. Sometimes father is too angry to sleep with mother and sleeps with F.A. instead. P.A's other brother, K.A., had seen his parents fighting and cursing. Father once pushed mother very hard. K.A. once saw father slap mother's face "really hard" but mother hit father back. "[S]he does not let him just hit her."
Father denied sexual abuse of P.A. and claimed he had observed that she recently had become more rebellious.
Mother indicated she now believed P.A.'s allegations of father's sexual abuse. P.A. told mother that father touched her inappropriately on two occasions. However, on the second occasion, he "barely touched" her because she moved away. Mother wondered if father had engaged in this conduct in order to move to his girlfriend's home. Mother indicated that if father "wanted out he should have said so but should not have touch[ed] my daughter."
The police report, which was included as an attachment to the jurisdictional report, indicated the family resided in a one-bedroom apartment. The three children shared a bunk bed with P.A. sleeping on the top bunk and her brothers sharing the bottom bunk. Mother and Father slept adjacent to the bunk bed. The police report indicated P.A. reported that on October 16, 2005, father stood over after she had gone to sleep and began to rub her vaginal area over her clothing. P.A. believed she was having a dream because she did not see father when she opened her eyes. The next evening, P.A. again believed she was dreaming when she felt father touch her vaginal area and, when she opened her eyes, father was not there. When P.A. was reinterviewed by the police, she said she had observed father standing over her while she slept and that father rubbed her vagina under her panties after her mother had gone to the bathroom. When father heard mother returning from the bathroom, father got back into bed. The following evening, P.A. said everyone was asleep when father began to rub her face with one hand and her vagina with the other. On this occasion, P.A. did not open her eyes and pretended to be asleep.
P.A.'s brothers both indicated they had not observed any inappropriate touching of P.A. by father.
On February 3, 2005, father admitted amended count (b)(1) of the petition which *451 alleged that, on numerous occasions, mother and father engaged in domestic confrontations in the presence of the children in which mother and father yelled at each other and father pushed and shoved mother. The parties submitted the remaining allegations of sexual abuse on the detention and jurisdictional reports with their attachments. After hearing argument, the juvenile court sustained the counts as amended to read that on one occasion, father "sexually abused [P.A.] consisting of but not limited to ... touching ... [P.A.'s] vagina under her clothes on top of her, underwear. Such abuse by the father places the children at risk."
Father's counsel then argued there was no evidence P.A.'s male siblings were at risk of harm. The juvenile court expressly found they were at risk of harm by reason of father's sexual abuse of P.A. The juvenile court noted the abuse happened at night and father regularly awoke in the middle of the night to cover the children with blankets. Further, P.A.'s younger brothers were approaching the age at which father began to molest P.A. The juvenile court sustained this aspect of the petition under section 300, subdivisions (b) and (d).

CONTENTIONS
Father contends there was insufficient evidence to support the allegation he sexually abused P.A. and, even if there were, there was insufficient evidence that her male siblings were at substantial risk of sexual abuse.

DISCUSSION

1. Sufficiency of the evidence as to P.A.

Father contends the inconsistencies in P.A.'s various statements and the absence of any corroborating evidence precluded a finding that father sexually abused the child. The alleged inconsistencies were whether father placed his hand over or under P.A.'s underwear, whether P.A. saw who touched her and whether P.A. had been dreaming about the molestation. Father also argues that, given the family's sleeping arrangements, any abuse would have been noticed by another family member and it would have been impossible for father to stand over P.A. as she slept in the top bunk. Father notes mother did not believe father had molested P.A. because P.A. would have told her and mother initially believed P.A. falsely had accused father because she resented his authority. Father corroborated this aspect of mother's statement when he told the social worker he recently had scolded P.A. for being outside after dark in front of her friends. Father claims his denial of the sexual abuse allegations is entitled to great weight because he admitted the allegation of domestic violence.
Father's arguments are not persuasive. By submitting on the social worker's report, father acquiesced in the juvenile court's consideration of the evidence contained in the report, but retained the right to challenge the sufficiency of that evidence to support the findings. (In re Ricardo L. (2003) 109 Cal.App.4th 552, 565-566, 135 Cal.Rptr.2d 72; In re N.S. (2002) 97 Cal.App.4th 167, 170, 118 Cal. Rptr.2d 259; In re Richard K (1994) 25 Cal.App.4th 580, 589, 30 Cal.Rptr.2d 575.) The standard of proof at the jurisdictional stage of the proceeding is a preponderance of the evidence. (In re Brison C. (2000) 81 Cal.App.4th 1373,1379, 97 Cal.Rptr.2d 746; § 355.) "When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence ... to support the conclusion of the trier of fact. [Citation.] In making *452 this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. [Citation.]" (In re Ricardo L., supra, 109 Cal.App.4th at p. 564, 135 Cal.Rptr.2d 72; In re Brison C., supra, 81 Cal.App.4th at pp. 1378-1379, 97 Cal.Rptr.2d 746.)
Here, although P.A.'s accounts of father's abuse varied in the details, each account related essentially the same two incidents that occurred on successive nights. Thus, substantial evidence supports the juvenile court's finding. We note that although father retained the right to cross-examine P.A. and could have presented evidence that suggested it was physically impossible to abuse P.A. in the manner she described, father failed to do either and he failed to argue the inconsistencies in P.A.'s statements as a basis for not sustaining the amended petition. He therefore cannot complain that the juvenile court chose to believe P.A.'s statements.
Father also claims there was no evidence that P.A. was currently at a substantial risk of suffering serious physical harm as required by section 300, subdivision (b) or currently at a substantial risk of suffering sexual abuse as required by section 300, subdivision (d). However, the case further cites for this proposition, In re Alysha S. (1996) 51 Cal.App.4th 393, 399, 58 Cal.Rptr.2d 494, involved a year-old allegation that father touched his son inappropriately. The allegations in this case were recent and demonstrated that P.A. currently was at risk of harm and sexual abuse from father.
In sum, the evidence supports the juvenile court's finding.

2. Sufficiency of the evidence as to P.A.'s male siblings.

Father argues that even if his first contention fails, there is insufficient evidence to support the allegation that P.A.'s two male siblings were at risk of harm as alleged in the amended petition. Father argues neither of the boys ever asserted father had touched them inappropriately, there was no evidence father had sexually abused his sons and both of the boys indicated they were unaware of any abuse of P.A. (Cf. In re Karen R. (2001) 95 Cal. App.4th 84, 90, 115 Cal.Rptr.2d 18.) Father notes his ongoing participation in sexual abuse counseling and parent education classes would minimize any potential risk of harm to P.A.'s brothers. Also, there was no evidence father suffered from any mental problem or other evidence to demonstrate a likelihood he would pose a risk to his sons. Father argues there was no evidence father had ever engaged in homosexual conduct (In re Jason L. (1990) 222 Cal.App.3d 1206, 1211-1212, 272 Cal.Rptr. 316) and sexual abuse of one minor does not necessarily create a substantial risk that the minor's siblings would be sexually abused (In re Rubisela E. (2000) 85 Cal. App.4th 177, 198-199, 101 Cal.Rptr.2d 760). Father concludes the dependency finding on the contested count must be amended to set aside the finding that P.A.'s male siblings were at risk of sexual abuse due to father's conduct.[3]
*453 We disagree. The juvenile court expressly rejected father's claim and found P.A.'s brothers were at risk of harm because they were approaching the age at which father had begun to abuse P.A. and father had access to the boys because he routinely awoke during the night to cover them.[4]
In Rubisela E., the case relied upon by father, the juvenile court sustained the dependency petition as to an abused 13year-old girl. (In re Rubisela E., supra, 85 Cal.App.4th at p. 197, 101 Cal.Rptr.2d 760.) Rubisela E. upheld the juvenile court's assertion of jurisdiction as to a nine-year-old female sibling under section 300, subdivision (j) (abuse of sibling).[5]In re Rubisela E. reasoned a nine-year-old female sibling would be at risk after her thirteen-year-old sister was removed from the home in that father might focus his abuse on his only other daughter. However, Rubisela E. concluded there was insufficient evidence the three male siblings were at substantial risk of sexual abuse. Rubisela E. explained: "We do not discount the real possibility that brothers of molested sisters can be molested (see In re Mark C. (1992) 7 Cal.App.4th 433, 439 [8 Cal.Rptr.2d 856]) or in other ways harmed by the fact of the molestation within the family. Brothers can be harmed by the knowledge that a parent has so abused the trust of their sister. They can even be harmed by the denial of the perpetrator, the spouse's acquiescence in the denial, or their parents' efforts to embrace them in a web of denial. [¶] ... But in the case at bench, while such a showing is possible, there has been no demonstration by the department that `there is a substantial risk [to the brothers] that [they] will be abused or neglected, as defined in ... [the applicable] subdivisions.' (Cf., e.g., In re Edward C. (1981) 126 Cal.App.3d 193, 198-199 [178 Cal.Rptr. 694] [where the brothers had witnessed their sister's severe beatings and had been subjects of less harsh physical discipline by their father].)" (In re Rubisela E., supra, 85 Cal.App.4th at pp. 198-199,101 Cal.Rptr.2d 760.)
In In re Karen R., supra, 95 Cal. App.4th 84, 115 Cal.Rptr.2d 18, this court affirmed a jurisdictional finding under section 300, subdivision (d) as to the younger siblings of a sexual abuse victim. In Karen R. the father beat and raped his daughter. The victim's younger brother and sister were not present when their father raped their sister. However, they saw their father strike the victim and heard her crying and telling their mother that father had raped her. The mother argued on appeal that there was insufficient evidence to support a finding under section 300, subdivision (d), that her son was at a substantial risk of sexual abuse.
Karen R. found the son personally had been a victim of sexual abuse as that term is used in section 300, subdivision (d). Karen R. additionally disagreed the son was not at risk of abuse merely because he was a male. In this regard, Karen R. concluded: "[A] father who has committed two incidents of forcible incestuous rape of *454 his minor daughter reasonably can be said to be so sexually aberrant that both male and female siblings of the victim are at substantial risk of sexual abuse within the meaning of section 300, subdivision (d), if left in the home.... Given the facts of this case, the juvenile court reasonably could conclude every minor in the home, regardless of gender, was in substantial danger of sexual abuse by father." (In re Karen R., supra, 95 Cal.App.4th at pp. 90-91, 115 Cal.Rptr.2d 18.)
We reach the same conclusion here. The abuse in this case concededly is less shocking than the abuse in Karen R. However, this does not mean that Rubisela E. therefore applies. Rather, we are convinced that where, as here, a child has been sexually abused, any younger sibling who is approaching the age at which the child was abused, may be found to be at risk of sexual abuse. As we intimated in Karen R., aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior.[6]
Here, the juvenile court properly could conclude that father's presence in the home placed his sons at risk of sexual abuse. This conclusion is consistent with section 355.1, subdivision (d), which provides in pertinent part that: "(d) Where the court finds that either a parent, a guardian, or any other person who resides with ... a minor who is currently the subject of the petition filed under Section 300 ... (3) has been found in a prior dependency hearing ... to have committed an act of sexual abuse, ... that finding shall be prima facie evidence in any proceeding that the subject minor is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect. The prima facie evidence constitutes a presumption affecting the burden of producing evidence."
Although section 355.1, subdivision (d), was not triggered here because there was no prior dependency proceeding at the time of the jurisdictional hearing, it nonetheless evinces a legislative determination that siblings of sexually abused children are at substantial risk of harm and are entitled to protection by the juvenile courts. For all of the foregoing reasons, we conclude that substantial evidence supports the assertion of jurisdiction over P.A.'s siblings under section 300, subdivisions (b), and (d).

DISPOSITION
The order is affirmed.
We concur: CROSKEY and ALDRICH, JJ.
NOTES
[1] Subsequent unspecified statutory references are to the Welfare and Institutions Code.
[2] A juvenile court's jurisdictional findings are reviewable on appeal from the dispositional order. (In re Tracy Z. (1987) 195 Cal.App.3d 107, 112, 240 Cal.Rptr. 445.)
[3] Father concedes that even if this contention succeeds, his male children will remain dependents based on the finding he and mother engaged in domestic violence in the presence of children. Nonetheless, he requests reversal of the sexual abuse counts as to P.A.'s male siblings in order to avoid the numerous negative repercussions the true finding has precipitated in his life.
[4] P.A.'s brothers were eight and five years old when the petition was filed. P.A. was nine years old when father began to abuse her.
[5] Section 300, subdivision (j), provides that a child may be adjudged to be a dependent of the court if the "child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i) and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other [facts] the court considers probative in determining whether there is a substantial risk to the child...."
[6] The Department seeks to distinguish In re Rubisela E. on the ground it involved the exercise of jurisdiction under section 300, subdivision (j). The Department argues the juvenile court in this case found the boys at risk of harm under subdivision (d), which arises when there is "a substantial risk that child will be sexually abused...." However, the distinction it is not determinative. Subdivision (j) applies when a sibling has been sexually abused and the child who is the subject of the juvenile proceedings is also at risk of being sexually abused. Subdivision (d) applies when the child who is the subject of dependency proceedings has been sexually abused or, is at risk of being sexually abused. Thus, both subdivisions require a finding of a substantial risk that the child who is the subject of dependency proceedings will be sexually abused by a parent or member of the child's household.