[No. B207604. Second Dist., Div. Four. June 3, 2009.]

In re CARLOS T. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
MARGARITA S. et al., Defendants and Appellants.

COUNSEL

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant Margarita S.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant Carlos T., Sr.

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Judith A. Luby, Principal Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**WILLHITE, J.**—This is the third appeal in a dependency case involving two children, Linsey T. and Carlos T., and their parents, Margarita S. (mother) and

Carlos T., Sr. (father).[1] In the first appeal, *In re Linsey T.* (Aug. 2, 2007, B194611) (nonpub. opn.), we affirmed the juvenile court's dispositional orders denying mother reunification services as to Linsey and suspending mother's visitation with Linsey. In the second appeal, *In re Carlos T.* (July 23, 2008, B202783) (nonpub. opn.), we affirmed the juvenile court's order establishing a plan of legal guardianship for Carlos and suspending mother's visitation with Carlos. While the second appeal was pending, the Los Angeles County Department of Children and Family Services (DCFS) filed, and the juvenile court sustained, a subsequent petition under Welfare and Institutions Code section 342.[2] Mother and father now appeal from the order sustaining the subsequent petition, contending there was insufficient evidence to support the juvenile court's order that Carlos and Linsey were at substantial risk of harm at the time of the jurisdictional hearing. We affirm the jurisdictional order.

## BACKGROUND[3]

### A. *Previous Referrals*

This family first came to the attention of DCFS in December 2001, when DCFS received a referral alleging that Linsey (who was seven years old at the time) had been sexually abused by father, and that mother knew about the abuse. That referral was closed as unfounded. DCFS received a second referral in April 2005 based upon similar allegations. Linsey and Carlos were removed from their parents' custody and declared dependants of the juvenile court, but Linsey later recanted the allegations of sexual abuse and the children were returned to parental custody. The juvenile court terminated jurisdiction in January 2006.

### B. *Initial Petition in This Case*

A month before the juvenile court terminated jurisdiction, Linsey was raped by father while mother was away. When mother returned home, the door to father's bedroom was locked. She knocked and, after a delay, father opened the door. She saw Linsey lying in the bed. Linsey told mother what father had done, and mother responded by telling Linsey to wash up and stay

---

[1] Although we are aware that the Reporter of Decisions recently recommended that minors be identified only by their initials in order to protect their anonymity (but see *In re Edward S.* (2009) 173 Cal.App.4th 387, 392, fn. 1 [92 Cal.Rptr.3d 725]), that recommendation was made after the decisions in the first two appeals were filed. Because we used the minors' (and their parents') first names in those opinions, we will continue to use them in this case.

[2] Further undesignated statutory references are to the Welfare and Institutions Code.

[3] Much of our factual and procedural background is taken from our opinions in the earlier appeals.

away from father. Although mother said she would file a police report, she did not do so, nor did she report the rape to DCFS.

Eleven-year-old Linsey became pregnant as a result of the December 2005 rape.[4] Six months later, in May 2006, mother asked Linsey's school to transfer Linsey to a school for pregnant girls. Upon discovering that Linsey was pregnant, school officials contacted DCFS and the police. When Linsey disclosed that father had raped her, mother yelled at Linsey, "Why did you tell them?" She said that Linsey was a liar and a bad child, and denied that she was aware of any sexual abuse by father. Father was arrested for sexual abuse/assault against Linsey.

DCFS filed a section 300 petition as to Linsey and Carlos based upon father's sexual abuse of Linsey and mother's failure to protect Linsey and Carlos, and the children were removed from parental custody. The juvenile court sustained the allegations of the petition as to both parents and denied reunification services to father. After a contested disposition hearing almost six months later, the court denied reunification services to mother "in light of her persistence and consistent lack of demonstrated ability to understand the impact of what has happened here and her responsibility in it, and in light of the continued denial of the facts." The court suspended mother's visitation with Linsey, finding visitation posed substantial risk of detriment to Linsey. Although the court ordered monitored visitation for mother and Carlos in a therapeutic setting, no visits took place after that October 2006 disposition hearing.[5]

In September 2007, the juvenile court ordered legal guardianship as the permanent plan for Carlos, and his foster mother, Hilda M. (foster mother) was named his legal guardian. Linsey continued in foster care. The court ordered no visits between Carlos and his parents at that time, finding visitation would be detrimental to his emotional well-being.

C.  *Subsequent Petition*

In the meantime, at some point during the summer of 2007, DCFS received a referral from Linsey's therapist, who said that Linsey told her that Carlos attempted to molest a cousin. The therapist also said that foster mother told her that Carlos disclosed that "father performed unimaginable sexual acts on him."

---

[4] Linsey gave birth in September 2006 to a baby girl, who was placed in foster care.

[5] As we noted in our opinion in the second appeal (B202783), mother did not start therapy until just before the October 2006 disposition hearing, and her therapist did not indicate until April 2007 that mother had progressed to the point that she was ready to see Carlos and Linsey. By that time, however, Carlos was thriving in his foster home, did not want to visit with mother, and engaged in misbehavior at the suggestion of such a visit.

DCFS conducted an investigation. In the initial interviews with foster mother, Linsey, and Carlos, DCFS gathered information that suggested Carlos may have been sexually abused by father. Initially, Carlos neither confirmed nor denied the abuse; he said he did not want to talk about it. By August 17, 2007, however, Carlos's therapist reported that Carlos was beginning "to open up about the abuse he had suffered." Three days later, Carlos told the emergency caseworker that father had sexually abused him more than once, but he would not provide any details about the abuse. In November 2007, the caseworker met again with Carlos in an attempt to get further information about the alleged abuse. Although Carlos was generally more talkative than he had been earlier, he did not provide any details about the alleged abuse. In December 2007, foster mother reported to DCFS that Carlos told her that father had performed oral sex on him. In January 2008, DCFS filed the subsequent petition at issue in this appeal.

The subsequent petition alleges counts under section 300, subdivisions (b), (d), and (j). The allegations of each count are identical: father sexually abused Carlos on numerous occasions, mother reasonably should have known of the abuse but failed to take action to protect the children, and father's abuse and mother's failure to protect places Carlos and Linsey at risk of physical harm, damage, danger, and sexual abuse.[6] The children were not detained; they remained placed in foster care.

DCFS filed a jurisdiction/disposition report in March 2008 that, among other things, described interviews that were conducted the previous month with father, mother, Linsey, Carlos, foster mother, and Carlos's therapist.

According to the report, father denied the allegations. He said he "always respected" his children (although he acknowledged he had sex with Linsey "one time"), and that he never touched Carlos or had Carlos touch him.

When mother was told about the allegations during her interview, she initially said she could not believe it, but then said that if her son said it happened, she believed him. She denied, however, any knowledge of the abuse, saying that she would have reported it had she known. When asked whether she reported father's abuse of Linsey when she first found out, mother admitted that she had not. But she appeared to try to avoid taking responsibility for that failure to report. She said: "I was his wife and he had to take care of us. I never told anyone but Linsey use [*sic*] to hit me all the time. She would always be mad at me for no reason. He [father] would always come home mad too, or tired. I was abused too. But I never said anything because I didn't want my kids to be taken from me."

---

[6] DCFS had also alleged a count under each subdivision based upon allegations that Carlos had engaged in sexual conduct with a cousin and Linsey, but those counts were dismissed at the request of DCFS.

Linsey told the investigator during her interview that she used to ask Carlos if someone was touching him. She said that sometimes Carlos ignored her, and other times he would change the subject.

During his interview, Carlos told the investigator that father touched his private parts, and pointed to his crotch area and behind him. He said it happened more than one time, and that father would put his hand down Carlos's underwear and "play with my front private part." He also said that father once walked in while Carlos was taking a shower and started playing with Carlos's private part. He said he did not play with father's private part.

Foster mother told the investigator about Carlos's sexualized behaviors, and asked whether Carlos had told the investigator about the time father touched Carlos's "butthole." She said that Carlos told her that father touched his "butthole" in the car, and that one time it was with something hard and was very painful.

Carlos's therapist also spoke with the investigator about the abuse allegations. She said that Carlos does not tell her about the abuse, but that foster mother tells her about Carlos's behavior. The therapist also said that she knew that Carlos keeps a journal, and that it was "pretty graphic."[7] She told the investigator that Carlos's behavior "is becoming more sexualized and [he] displays signs of a perpetrator."

In addition to the jurisdiction/disposition report, the juvenile court received reports from Linsey's and Carlos's court-appointed special advocate (CASA). Among other things, the CASA reported that Linsey testified against father in his criminal trial, and that father was found guilty of aggravated child molestation (Pen. Code, § 269), lewd act with a child with great bodily injury (Pen. Code, §§ 288, subd. (a), 667.61), and continuous sexual abuse of a child (Pen. Code, § 288.5). Father was scheduled to be sentenced on April 29, 2008.[8]

The jurisdiction hearing on the subsequent petition was held on April 28, 2008, the day before father was due to be sentenced. Father moved to dismiss the petition on the grounds that DCFS did not meet its burden of proof. His attorney noted that the children's statements about what happened were not specific and were very ambiguous, and argued that there was no current risk of harm to either child because father had had no contact with them for the previous two years. Mother's attorney joined in father's arguments, and also

---

[7] Apparently, foster mother noticed Carlos's journal on the floor of his bedroom when she was cleaning, and she read a couple of pages. She found them very disturbing, so she discussed them with Carlos's therapist.

[8] It appears that father remained incarcerated from the time of his arrest in May 2006.

argued that the alleged abuse necessarily was remote in time because father had been incarcerated for the previous two years. She contended that the children were not currently at risk because father was incarcerated and mother had participated in therapy to address her failure to protect Linsey.

The juvenile court denied father's motion to dismiss, and sustained the subsequent petition. The court found there was sufficient evidence that the children were at risk of harm because father was a sexual predator whose acts have a long-term impact on his victims, and because mother has not shown the level of insight necessary to adequately protect her children. The court found that Carlos and Linsey were persons described by section 300, subdivisions (b), (d), and (j).

Both mother and father appeal from the jurisdictional order.

### DISCUSSION

Mother and father argue on appeal that there was no substantial evidence that the children were at risk of abuse or harm at the time of the jurisdiction hearing because father was incarcerated and neither parent had visited either child for the previous two years. Therefore, both parents argue there was no basis for the jurisdictional order. We disagree.

### A. *Different Subdivisions Require Different Showings*

As noted, the juvenile court found that Carlos and Linsey were persons described under subdivisions (b), (d), and (j) of section 300. Mother and father argue that, under all three subdivisions, the juvenile court must find that there is a substantial risk at the time of the jurisdiction hearing that the children would be harmed or abused. The statutory language does not bear this out.

The subdivisions of section 300 describe the categories of children who may be adjudged dependent children of the juvenile court. Subdivision (b) relates to children who have suffered or are at risk of suffering serious physical harm or illness, subdivision (d) relates to children who have been or are at risk of being sexually abused, and subdivision (j) relates to siblings of children who have been abused or neglected. Although there are similarities in the language used to describe the categories, there are differences that have a significant impact on the findings that must be made to declare a child a dependent child of the juvenile court.

Subdivision (b) provides in relevant part: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness,

as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . . *The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness.*" (§ 300, subd. (b), italics added.) Subdivision (d) provides in its entirety: "The child has been sexually abused, *or* there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." (§ 300, subd. (d), italics added.) Subdivision (j) provides in relevant part: "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), *and* there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." (§ 300, subd. (j), italics added.)

Clearly, subdivision (j) of section 300 requires a finding of a current risk of abuse, because a child under subdivision (j) must be both a sibling of an abused child *and* at risk of being abused. In contrast, a child comes within subdivisions (b) and (d) of section 300, if he or she has been harmed or abused *or* is at risk of being harmed or abused. Under subdivision (b), however, the child does not remain a dependent child of the juvenile court under that subdivision if he or she is no longer at risk of suffering physical harm or illness. It follows, then, that dependency jurisdiction is not warranted under subdivision (b) if, at the time of the jurisdiction hearing, there no longer is a substantial risk that the child will suffer harm.

There is no such provision limiting the duration of dependency in subdivision (d) of section 300. In light of the different language of the subdivisions, we must conclude that a finding of current risk is required for jurisdiction under subdivisions (b) and (j) of section 300, but not for jurisdiction under subdivision (d). (*Fairbanks v. Superior Court* (2009) 46 Cal.4th 56, 62 [92 Cal.Rptr.3d 279, 205 P.3d 201] ["The use of differing language in otherwise parallel provisions supports an inference that a difference in meaning was intended."].)

B.   *Jurisdiction Under Section 300, Subdivision (d)*

Neither father nor mother discusses the absence of language in section 300, subdivision (d), limiting jurisdiction to children who are currently at risk of abuse. Instead, they rely upon cases decided by Division Three of this district, *In re Karen R.* (2001) 95 Cal.App.4th 84 [115 Cal.Rptr.2d 18] and *In re P.A.* (2006) 144 Cal.App.4th 1339 [51 Cal.Rptr.3d 448], to argue that jurisdiction under subdivision (d) is improper because father was incarcerated

at the time of the jurisdiction hearing and therefore there was no risk that he would sexually abuse them. Their reliance on those cases is misplaced.

In each of those cases, father had sexually abused his daughter, and the issue was whether the juvenile court could exercise jurisdiction over the child's male sibling based upon the father's abuse of a daughter. (*In re Karen R., supra*, 95 Cal.App.4th at pp. 89–91; *In re P.A., supra*, 144 Cal.App.4th at p. 1345.) In *In re Karen R.*, although the appellate court concluded that the male sibling was the victim of sexual abuse as that term is defined because he witnessed the abuse of his sister, it also held that, even if he had not witnessed the abuse, there was a substantial risk of abuse due to the father's sexually aberrant behavior with regard to the daughter. (*In re Karen R.*, at pp. 89–90.) In *In re P.A., supra*, 144 Cal.App.4th 1339, there was no evidence that the father had sexually abused his son or that the son had witnessed the abuse of his sister; therefore, the juvenile court could assume jurisdiction over the son only if there was a substantial risk that the father would sexually abuse his son. Hence, the appellate court properly focused upon whether the father's past abuse of his daughter presented a risk of future abuse of his son, and concluded that it did. (*Id.* at pp. 1345–1347.)

That is not the situation in this case. Here, the juvenile court found that Carlos was a dependent child under section 300, subdivision (d), based on substantial evidence that father did sexually abuse Carlos: Carlos told the DCFS investigator that father "play[ed] with [his] front private part" numerous times, and he told foster mother that father touched his "butthole" with something hard, causing him pain. Because there was substantial evidence to support the juvenile court's finding of jurisdiction over Carlos under the "has been sexually abused" prong of subdivision (d), there is no need to discuss whether there was sufficient evidence to support jurisdiction under the *alternative* "substantial risk" of abuse prong of subdivision (d). (We address the court's finding of jurisdiction over Linsey under the "substantial risk" of abuse prong of subd. (d) in pt. C., *post.*)

Mother argues, however, that even if there was substantial evidence to support the juvenile court's finding that father sexually abused Carlos, there was insufficient evidence to support the court's finding that she reasonably should have known about the abuse. We disagree.

"In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible. Where there is more

than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact." (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547 [247 Cal.Rptr. 784].)

In this case, the juvenile court previously had found (supported by substantial evidence and affirmed on appeal) that mother knew that father was sexually abusing—and had raped—their 11-year-old daughter Linsey, and did nothing to protect Linsey from that abuse. Given her knowledge that father was a sexual predator, it was reasonable for the court to infer that mother should have suspected that father also was sexually abusing their son Carlos. Thus, the court's finding that Carlos was a dependent child under section 300, subdivision (d) based upon father's sexual abuse and mother's failure to protect was supported by substantial evidence.

C. *Jurisdiction Under Subdivisions (b), (j), and the "Substantial Risk" Prong of Subdivision (d)*

In addressing the "substantial risk" of harm or abuse requirement of the various subdivisions of section 300, father and mother primarily rely upon the analysis of the court in *In re Rocco M.* (1991) 1 Cal.App.4th 814 [2 Cal.Rptr.2d 429]. In that case, the juvenile court declared a child a dependent child under section 300, subdivision (b) based upon evidence that, among other things, the child was physically abused by a caretaker on one occasion. Although the appellate court affirmed the juvenile court's jurisdictional order based upon evidence related to the mother's drug abuse, finding the juvenile court reasonably could conclude that the mother's conduct created a substantial risk that the child would ingest drugs, it questioned whether jurisdiction could be based upon the single incident of physical abuse by the caretaker in the absence of evidence that the mother should have anticipated that the caretaker would abuse him or that she would leave the child in the caretaker's care again. (1 Cal.App.4th at p. 825.) The appellate court explained: "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm. [Citations.] Thus the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future.' [Citations.]" (*Id.* at p. 824, original italics, fn. omitted.)

Father and mother both argue there was no substantial risk at the time of the jurisdiction hearing that father would abuse Carlos or Linsey, because he was incarcerated. In addition, mother argues there also was no substantial risk of abuse because Carlos and Linsey already had been declared dependent children, and therefore were protected from future abuse.

■ Addressing the latter argument first, we note that it is always the case with regard to a subsequent petition that the child at issue has already been declared a dependent child. The language of section 342 requires it: "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition." Thus, the fact that a child is currently protected from further abuse simply because the child already is under the jurisdiction of the juvenile court cannot preclude the court from finding, based upon new evidence of past abuse, that the child remains at risk of abuse. The question to be asked in such a case is whether, in the absence of the state's intervention, there is a substantial risk that the child will be abused.

■ This brings us to father's and mother's principal argument, i.e., that there is no substantial risk of abuse because father was incarcerated at the time of the jurisdiction hearing on the subsequent petition. It certainly is true that at that time father had no immediate access to Carlos and Linsey due to his incarceration. But father had not yet been sentenced on his sexual molestation convictions, and he still had the right to appeal those convictions.

If father's convictions were reversed, there is a possibility that father would be released from custody, and there is every reason to believe that father would resume his sexual abuse of Carlos and Linsey without the state intervening to prevent him from obtaining access to them. In an interview conducted a month before the jurisdiction hearing, father made light of the accusations of sexual abuse. He smiled and chuckled when he denied abusing Carlos, and even though he admitted having intercourse with Linsey, he denied being the father of her child, saying he only had sex with her one time. Given his failure to even acknowledge the abuse or the harm he has caused, it is likely that he would continue to abuse the children if he had access to them.

Moreover, there was evidence from which the juvenile court could conclude that mother would not protect the children from abuse. Although mother had completed DCFS's child sexual abuse treatment program and individual counseling by the time of the jurisdiction hearing, when she was confronted with the accusations of the subsequent petition, she seemed to avoid accepting responsibility for her failure to protect the children in the past, saying that she had been abused because Linsey used to hit her and was always mad at her "for no reason," and father used to come home mad or tired. Based upon these facts, the juvenile court reasonably could find that both children were at substantial risk of abuse.

## DISPOSITION

The jurisdictional order is affirmed.

Epstein, P. J., and Suzukawa, J., concurred.