Filed 10/28/13  In re Tatyana S. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re TATYANA S., a Person Coming Under the Juvenile Court Law. | B246604 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>VERNA N.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK94693) |

APPEAL from an order of the Superior Court of Los Angeles County. Sherri Sobel, Referee.  Affirmed

Linda Rehm, under appointment by the Court of Appeal, for Appellant Verna N.

Julie E. Braden, under appointment by the Court of Appeal, for Minor Tatyana S.

_____

Verna N. (Mother) challenges the juvenile court's finding that her daughter, Tatyana S., is a child described by Welfare and Institutions Code section 300, subdivision

(b).[1]  Mother asserts there was insufficient evidence to support the juvenile court's order sustaining the allegations that Tatyana is at substantial risk of harm due to exposure to Mother's violent relationship with her husband and due to the husband's alcohol and drug abuse.  We find substantial evidence supports the finding that Tatyana is at risk as a result of her exposure to Mother's violent relationship.  The jurisdictional order is affirmed.

## FACTS

Tatyana was born to Mother and James S. in 2003.  Mother has three other children:  an adult daughter living with her husband in Arizona and two teenage sons living in Victorville with their father, Steven W.  A juvenile dependency petition under sections 300, subdivisions (a) and (b) was filed on July 23, 2012, alleging that eight-year old Tatyana had suffered or there was a substantial risk that she will suffer serious physical harm as a result of the violent altercations between Mother and her husband, Gilbert R.  The petition further alleged that Gilbert[2] abuses drugs and alcohol, placing Tatyana at substantial risk of harm.

The Los Angeles Department of Children and Family Services (Department) received a referral on July 18, 2012, that Gilbert came home intoxicated and became violent.  A caseworker interviewed Mother, Tatyana and Gilbert at their home at 10:00 p.m. that night.  All three confirmed that Gilbert and Mother had an altercation on July 17, 2012, shortly before they were to attend a Dodgers game.  Gilbert, who had been drinking, slapped Mother on her lip in Tatyana's presence.  Tatyana began to hit him with a shoe because she wanted him to stop.  Gilbert and Mother confirmed that they fight often but denied that Tatyana witnessed these fights.  Tatyana, however, reported that Mother and Gilbert yell and scream often and say bad words to each other.  She does not like when Gilbert drinks because "he turns into something else, and he is mad."  There

---

[1]  All further section references are to the Welfare and Institutions Code unless otherwise specified.

[2]  For convenience, we will refer to all parties by their first name unless otherwise noted.  We do not intend any disrespect by doing so.

were no marks or bruises on Tatyana. She stated that she felt safe and there was enough food in the house.

Mother acknowledged a history of abusive relationships with four or five different men, including Tatyana's father, James. She also reported her father sexually abused her when she was a child. Mother admitted Gilbert called her names, including, "whore, cunt, bitch and slut." Mother recalled an incident in April 2012 when Gilbert was high on cocaine and pushed her. He also kicked her during Tatyana's birthday party last year and left a permanent scar on her arm. The caseworker confirmed there was a mark on Mother's arm. Mother denied Tatyana witnessed any of these events. The caseworker noted she did not see any marks on Mother as a result of the most recent altercation. Mother said she intended to move to Arizona to live with her adult daughter by August 3 as a result of her problems with Gilbert.

Gilbert admitted to the case worker that he pushed Mother, which probably caused her lip to swell. Tatyana witnessed it and hit him on his back with a shoe. Gilbert blamed Mother for initiating their frequent conflicts. He reported she hit him two months ago with her cane. Both Mother and Gilbert admitted past use of meth and cocaine but denied any current use. Mother moved out of the home that night into her aunt's house in Pico Rivera. Her aunt stated she could stay for a month. Mother completed a drug test the following day. The results were negative.

Mother and her children have a history of encounters with the Department, primarily as a result of Mother's abusive relationships with men. A referral in November 2003 was substantiated for physical abuse of Joshua[3] by his father. Another referral in December 2003 was substantiated for caretaker absence and incapacity of Joshua and Lorenzo. The referral resulted from Lorenzo, who was age four at the time, exhibiting violent behavior, including cursing, yelling, threatening to kill himself and stating that he hated his parents. On December 28, 2003, Steven became so angry with Lorenzo that he tried to choke him. Two other referrals in 2004 and three in 2007 against Mother and

---

[3]     Joshua and Lorenzo are Mother's teenage sons living with their father, Steven W.

3

Tatyana's father, James, for abuse or neglect were determined to be unfounded or inconclusive.

At the detention hearing, the juvenile court found a prima facie case had been made to establish Tatyana as a dependent of the court under section 300, subdivisions (a) and (b). Tatyana was released to Mother's care and the Department was ordered to provide family maintenance services. Mother was also ordered to a drug treatment program with random testing, individual counseling and domestic violence counseling. Tatyana was ordered to individual counseling. The juvenile court also issued a temporary restraining order against Gilbert on July 23, 2012, restricting his access to Mother and Tatyana. At the August 13, 2012 hearing, Gilbert appeared along with Mother and James. No permanent restraining order was issued against Gilbert at that hearing.

Later, Mother told the caseworker that she and Gilbert were pressured into making the admissions in the detention report because the caseworker threatened to remove Tatyana from her care. Mother believed "that if she did not act like there was on-going domestic violence between [her] and [Gilbert,] she would look as if she was not being protective of the child. Thus, she made things up to include saying father hit her on the lip, that he has always beat her, etc. However, the mother denies that there has been on-going domestic violence between her and [Gilbert]." Mother explained that Gilbert had a stroke and was forced to stay home. As a result, Mother and Gilbert were not getting along. She felt she and Gilbert needed some time away from one another. Prior to the incident at issue, Mother decided to move in with her older daughter in Arizona until her daughter's husband returned from Afghanistan at the beginning of the year.

Mother explained that she did not get a swollen lip from Gilbert hitting her. Instead, he had been upset because he had just given his daughter $20 despite having financial difficulties. Mother then asked for another $20 to go to the Dodger game with Tatyana. They fought over how much Gilbert had to drink that day and how loud he was playing his music. They then engaged in a tugging match over Mother's purse. The purse strap hit Mother in the lip, causing it to swell.

4

In an August 20, 2012 jurisdictional and dispositional report, the Department reported an interview with Tatyana's current therapist, Sarah Munoz. Sarah had been seeing Tatyana since the beginning of August 2012. Sarah spoke to Tatyana's previous therapist, who had been seeing her at home on a weekly basis since April 2012. She conducted weekly sessions with Tatyana and some family sessions with Mother and Gilbert. The prior therapist made the referral to the Department after Mother asked her for referrals for domestic violence counseling in Arizona. Mother told the therapist about the incident with Gilbert. Although she made the referral, the therapist did not indicate any concern about ongoing domestic violence in the home. As a result of her conversation with the therapist and her review of the case file, Sarah concluded that the family seemed "to be workable with regard to in-home services with Mother's husband Gilbert . . . being in the home. Sarah indicated that there did not appear to be any evidence of any on-going domestic violence in the home."

Gilbert's daughter, Faith, reported that she was unaware of any domestic violence in the home but felt that any problems in the home were Mother's fault. The Department concluded in its August 20, 2012 report that the family required intervention though it believed the level of intervention services did not require court supervision. The family had indicated they were willing to accept voluntary family services and the Department requested the juvenile court dismiss the petition without prejudice.

In an October 2, 2012 report, the Department confirmed that Tatyana and Mother had moved back to their home and Gilbert had moved out. The Department also noted that Gilbert had posted a negative drug test on September 4, 21012. The Department's investigation showed Gilbert had been arrested on May 9, 2004, for driving while under the influence of alcohol and drugs. The Department also received three letters from Tatyana's prior teachers and school superintendent indicating they had positive experiences with Mother and Gilbert with regard to Tatyana's educational needs. The Department again recommended the juvenile court dismiss the petition without prejudice and the family receive voluntary family maintenance services.

5

At the October 2, 2012 jurisdictional hearing, the juvenile court sustained the allegations made under b-1 and b-2. It found Tatyana a dependent of the court. Tatyana was ordered to be placed in Mother's home with the condition that Gilbert stay out of the home. Mother filed an application for rehearing and order under section 252 on October 12, 2012, on the ground that the juvenile court denied Mother the right to address the court or argue her position at the jurisdictional hearing.

The juvenile court granted Mother's motion for rehearing and set aside the findings and orders it made on October 2, 2012. At the hearing, both Gilbert and Mother testified. Gilbert denied hitting Mother and stated he was willing to do whatever was necessary to be with his family. Mother recanted her previous statement about domestic violence and asserted that Tatyana did not witness any of their arguments. The juvenile court found Tatyana a dependent of the court under section 300(b) and allowed Gilbert monitored visits. The juvenile court explained, "I have seven priors on this family. Seven priors on Alexis. Different child than Tatyana. Seven priors on Alexis. I have the report from the mother. Father came home . . . intoxicated. I think she meant stepfather. Became violent, kicked her from behind, pushed her on the bed, covered her mouth to prevent her from talking or shouting. Mother got a swollen lip. And it happened in the presence of Tatyana. The reporting party states that the child started throwing shoes and other stuff at the father to get him to stop. Mother did not call law enforcement. Child reported dad hit mom only once and it happened only one time. She witnessed the father, the person she calls dad—that's [Gilbert]—slap the mother on her lip, where she intervened by hitting [Gilbert] with a shoe. Dad—Child stated dad was drinking before it happened and she does not like when he drinks because he turns into something else and he's mad. Child reported, mom and dad yell and scream often and say bad words to each other. She feels sad when they do it. Mom smokes cigarettes. Dad drinks and smokes cigarettes . . . and it goes on and on and on and on. [¶] And, you know, here we sit here today. I think the Department's lost its mind. I really do . . ."

Mother filed a timely notice of appeal.

6

## DISCUSSION

On appeal, Mother asserts there was insufficient evidence supporting the juvenile court's jurisdictional finding. Mother relies on the Department's conclusion that the family did not require court supervision. The Department's investigation showed there was no evidence that Tatyana was at current or future risk of harm at the time of the jurisdictional hearing as there was no ongoing domestic violence in the home. Instead, there was only one incident when Gilbert slapped Mother. We disagree. Substantial evidence supports the juvenile court's jurisdictional finding.

At the jurisdictional hearing, the juvenile court determines whether the allegations in the petition that the minor comes within section 300 – and therefore within the juvenile court's jurisdiction – are true. The court's jurisdictional findings must be based on a preponderance of the evidence. (See § 355.) A child may be considered a dependent of the court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (§ 300, subd. (b).) "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, italics omitted.) Thus previous acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur. (*Ibid.*; *In re Steve W.* (1990) 217 Cal.App.3d 10, 22.)

The substantial evidence test is the appropriate standard of review for jurisdictional findings by the juvenile court. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654; *In re P.A.* (2006) 144 Cal.App.4th 1339, 1344.) The term "substantial evidence" means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid

7

value. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) In determining whether substantial evidence supports the findings, we view the evidence in the light most favorable to the findings, noting that questions of fact and credibility are the exclusive province of the juvenile court. (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564; *In re Tania S.* (1992) 5 Cal.App.4th 728, 733.) We do not reweigh the evidence or exercise our independent judgment. (*In re Ricardo L., supra*, at p. 564; *In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)

Here, the juvenile court found true two allegations under section 300, subdivision (b):

"b-1 [¶] The child Tatyana['s] mother, Verna [N.] and mother's male companion, Gilbert [R.] have a history of engaging in violent altercations. On 7/17/12, the male companion slapped the mother's face resulting in a swollen lip in the child's home, in the presence of the child. The male companion pushed the mother. On a prior occasion the male companion kicked the mother's arm, inflicting a permanent scar to the mother's arm. On a prior occasion, the male companion pushed the mother. The mother threw a beer can at the male companion. On a prior occasion the mother, struck the male companion's head with a cane. The mother failed to protect the child by allowing the male companion to reside in the child's home and have unlimited access to the child. Such violent conduct on the part of the male companion against the mother and the mother's failure to protect the child endangers the child's physical health and safety and places the child at risk of physical harm, damage, danger and failure to protect.

"b-2 [¶] The child Tatyana['s] mother, Verna [N.] placed the child in a detrimental and endangering home environment in that the mother allowed the mother's male companion, Gilbert [R.], who mother knew is a current abuser of cocaine and alcohol and was under the influence of cocaine and alcohol in the child's presence to reside in the child's home and have unlimited access to the child. Such a detrimental and endangering home environment established for the child by the

8

mother endangers the child's physical health and safety placing the child at risk of physical harm, damage and danger."

Substantial evidence supports the juvenile court's findings as to the allegations contained in b-1. It is undisputed that Mother and Gilbert engaged in an altercation on July 17, 2012, that resulted in Mother having a swollen lip. The fight they had was enough to cause Tatyana, an eight-year-old, to intervene by hitting Gilbert with her shoe. Although both Mother and Gilbert recanted this version of events in their testimony at the jurisdictional hearing, it is apparent the juvenile court did not believe them. (*In re Ricardo L.*, *supra*, 109 Cal.App.4th at p. 564 [credibility determinations for trier of fact].) Moreover, Tatyana confirmed that Gilbert slapped Mother on the lip.

It is also undisputed that Mother and Gilbert have had previous violent altercations. Mother hit Gilbert on the head with her cane. Gilbert kicked her on the arm. Tatyana has heard Gilbert calling Mother derogatory names and has witnessed their frequent fights. Despite these issues, Mother does not recognize that her relationship with Gilbert may be harmful to Tatyana. Even when their fight on July 17 resulted in a swollen lip, she failed to call the police. Mother has acknowledged being in previous violent relationships and abuse by her father. Mother also knew that she and Tatyana should move out. Yet, she never did. Although she left to stay with her aunt after her interview with the caseworker, Mother very soon moved back into the home and continued to advocate for Gilbert to return to the home.

There is no evidence that Mother has received any domestic violence treatment or counseling despite being ordered to do so by the juvenile court. Sarah Munoz, Tatyana's therapist, indicated she provided Mother with 15 minutes of "collateral services" during Tatyana's psychotherapy sessions. Sarah recommended individual therapy for Mother and family therapy once a month for Mother and Tatyana. Mother's violent relationship with Gilbert, coupled with Mother's history and failure to seek help, constitute substantial evidence supporting a finding under b-1.

9

Mother also contends that there is not sufficient evidence to support the finding under b-2 that Tatyana is at risk because Gilbert is a current abuser of drugs and alcohol. We need not reach this issue. Jurisdiction was properly taken under the allegations in b-1, as discussed above, and Tatyana was properly declared a dependent of the juvenile court on that basis.

## DISPOSITION

The juvenile court's order taking jurisdiction over Tatyana under section 300, subdivision (b) is affirmed.


BIGELOW, P. J.

We concur:


RUBIN, J.


GRIMES, J.

10