Filed 10/3/13  In re Daniel J. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re DANIEL J., a Person Coming Under the Juvenile Court Law. | B246584 (Los Angeles County Super. Ct. No. CK95611) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Appellant, v. OSCAR J., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Veronica S. McBeth, Judge.  Affirmed in part, reversed in part and remanded.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Appellant.

No appearance for Minor.

* * * * * *

Oscar J. (Father) appeals from the juvenile court orders adjudicating his son, Daniel J. (the child), a dependent pursuant to Welfare and Institutions Code[1] section 300, subdivision (b) and removing the child from Father's custody. In a cross-appeal, the Los Angeles County Department of Children and Family Services (the department) challenges an order dismissing a domestic violence count from the dependency petition. We affirm the juvenile court's orders declaring the child a dependent and removing him from the custody of Father. We reverse the order dismissing the domestic violence count.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 21, 2012, the department filed the petition on behalf of the four-year-old child. As sustained, the petition alleged Father is a current abuser of alcohol, which renders him incapable of providing regular care and supervision of the child. On July 14, 2012 and other occasions, Father was under the influence of alcohol. The child's physical health and safety were at risk because of Father's abuse of alcohol.

The juvenile court struck the following domestic violence allegations. The child was at risk of physical harm because Father and A.J. (Mother) have a history of engaging in violent altercations in the child's presence. On July 14, 2012, Father struck Mother's face with his fists, causing her to fall backward and become dazed and disoriented. Father inflicted pain and a bleeding laceration to Mother's nose. Father struck Mother's body on prior occasions. Mother failed to protect the child by allowing Father to reside in the family home with unlimited access to the child. On July 14, 2012, Father was arrested for inflicting corporal injury to a spouse cohabitant. The child's physical health and safety were endangered by Father's violent conduct against Mother and Mother's failure to protect.

The detention report stated a social worker went to the family home on July 16, 2012 after receiving a referral alleging emotional and physical abuse of the child. The referral alleged that on July 14, 2012, an anonymous call was made to report a possible in progress domestic violence at the family home. When police officers arrived, the child

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

came out crying. The child said that Mother "was bleeding and that his daddy had done it." Police officers subsequently discovered Mother in a back room crouching in a corner. Mother had blood on her. Mother initially claimed the blood was ketchup. Mother denied she had been punched. Mother subsequently admitted that she had been punched. Father was arrested but released the next day after he made bail.

On July 16, 2012, the social worker interviewed Father at home. Father denied the social worker entry into the home and access to the child. Father stated "he was not up to it today" and requested that the social worker return the next day. When the social worker advised Father that the allegations needed to be addressed, Father indicated the social worker should return in an hour when Mother was home. Father stated he had a bad day at work and was "hanging out" with friends. The social worker subsequently learned the friends were Father's adult children, who also resided in the home.

Father said that the incident between him and Mother was "nothing." Father denied hitting Mother. Father explained that he went to a local bar to watch a fight. However, the bar did not broadcast the fight. He had a couple of beers and went outside where a woman asked him for a ride. Father told the woman no. He later learned that, just about that time, Mother was driving by on her way home from work with the child. Mother went home, dropped off the child, and returned to the bar. Mother got into a physical altercation with the woman Father was talking to outside the bar. The woman gave Mother a bloody nose. The police arrested Father because they assumed he had hit Mother.

Father had been drinking on the day of the interview. He explained that he had been drinking because he had a bad day at work and was worried that he might lose his job over the situation. Father worked for the Los Angeles Police Department as a detention officer. He also stated he had three metal plates placed in his head about three years before the incident. Father said that on the day of the incident Mother was upset and told him "she would want to kill him." But she could not because of the metal plates and she did not want to harm him.

In Mother's interview on July 16, 2012, Mother denied any domestic violence between Father and her. Mother said she lied about the incident. The woman at the bar hit Mother, giving Mother a bloody nose. Father did not hit Mother. Mother was so embarrassed about her own behavior that she allowed the police to think her husband hit her. She said she was jealous when she drove by the bar and wanted to know if something was going on between her husband and the woman. Mother said no one else witnessed the incident. Mother said she did not think things through because she was so angry at Father.

The child did not give the social worker much information. The child started out by saying Father did not hit Mother. The child denied seeing anyone hit Mother. The child stated he saw Mother was bleeding from her nose. The child denied seeing Father hit Mother. The child stated that his parents argue, get mad and that Father yells. The child mentioned something about a couch. But it was unclear as to what the child was trying to say.

The child's two adult siblings were aware of the incident. Both adult siblings were not sure what happened. The police arrived and told one sibling that Father had been in a scuffle and arrested him. The adult sibling observed normal fighting between Father and Mother. The paternal grandmother lived in the house. She came home and heard Father and Mother arguing in English. She is Spanish-speaking and did not understand what they were saying. She did not witness or have knowledge of any sort of domestic violence between Father and Mother. When interviewed, Paternal Grandmother stated she had no concerns of abuse between Father, Mother or the child.

The police report stated when the child exited the front door he was upset and appeared to have been crying. The child looked at one officer and said "momma has blood." The child then said "daddy did it." An officer discovered Mother in a locked room. Mother had been crying. An officer observed what appeared to be fresh blood stains on the front of Mother's blouse. Mother reported that the stains were ketchup.

Mother subsequently admitted Father struck her in the face. She told police that when she returned home on the day of the incident she saw several articles of her clothing

4

on the front porch. When she entered the residence, Father appeared to be angry and agitated. She believed that, due to past incidents, Father was angry because she was not at the residence when he returned home from work. Mother asked him why he was upset. As he advanced toward Mother, Father shouted "don't f*** with me!" Mother suddenly felt a powerful blow to the front of her face. The force of the blow caused Mother to stumble backward and fall on the living room sofa. Mother said it felt as though her "head exploded." Mother was disoriented before feeling blood gushing from her nose.

Mother told police she thought alcohol played a role in the incident. Mother believed Father had an alcohol abuse problem. Every time Father became intoxicated, he "gets out of control." Mother stated Father became angry and unreasonable. Father had been verbally abusive to Mother in the past. But, that was the first time he hit her. According to Mother, she initially lied to the police because she did not want Father to "get into trouble."

In an interview with police, the child said "mom had blood coming out" and "daddy hit her." The child then closed his right hand, forming a fist and placed his fist on his nose. Father told police Mother got mad at him for talking to a couple of girls at a bar.

After reviewing the police report, the department referred Father and Mother to counseling. Father was referred to Alcoholics Anonymous.

On August 9, 2012, the social worker met with Mother. Mother stated she had attended two individual counseling sessions as well as couples counseling. Mother stated Father was attending individual counseling and AA meetings. Mother stated that things were fine at home between Father and her. There was no other contact with police and Father's next criminal court date was scheduled for August 14, 2012.

The social worker interviewed the child, who without prompting, said "[D]ad didn't hit [M]om." The child also said he "didn't see anything."

On September 6, 2012, the social worker met with Mother, who stated everything was going well. Mother said she continued to go to therapy. Mother's therapist stated she attended only one session and cancelled a second session because of her work

5

schedule.  The social worker could not verify that Father was participating in any services.

On September 12, 2012, Mother and Father were scheduled to attend a meeting to address the department's concerns about the lack of services.  The meeting was scheduled to accommodate Father's work schedule.  Mother went alone to the meeting.  She stated Father was not willing to go to the meeting because everything that was going on was too depressing for him.  Mother reported Father was taking Prozac for his depression.  Mother was "worried for her husband."  She wanted him to get help.  Mother then informed the social worker that there was a restraining order against Father.  Father was staying with different relatives.  Mother was planning to move into the maternal grandmother's house with the child.  During the meeting, Mother admitted Father struck her on the nose.  Mother also reported that Father drank a lot of alcohol, was aggressive and hit her.

On September 13, 2012, the social worker obtained copies of two permanent restraining orders issued on behalf of Mother protecting her from Father.  The restraining orders were dated August 14, 2012 and September 7, 2012.  Mother denied knowledge that a restraining order had been issued on August 14, 2012.

The department went to serve Father with a warrant to remove the child from his custody.  Father became tearful and stated he wanted to tell his version of what happened.  He showed the social worker various scars on his head.  Father said he suffered from extreme headaches and migraines.  Father was suffering from one of the migraines on the day of the incident.  Mother and the child were not home when Father arrived home after a 12-hour work shift.  Father knew Mother was with relatives and thought she should be home to help him.  After Mother arrived home, the two began to argue.  It escalated to the point where both Father and Mother were using profanity.  Father said he "slapped her."  Father continued to cry and stated:  "I was wrong.  I take responsibility for my actions."  He further stated it was the first time and he just made a mistake.  The home was empty without Mother and the child.

6

On September 21, 2012, the juvenile court held an initial detention hearing. Father was found to be the child's presumed father. The juvenile court detained the child from Father's custody. The child was ordered released to Mother. Father was ordered to submit to weekly drug testing. Attorneys for Mother and the child requested the department to assess whether the matter could be resolved informally with court supervision. The department was ordered to look into the possibility of dismissing the petition.

In the October 24, 2012 jurisdiction/disposition report, the department stated Father had a prior referral dated May 25, 2012 involving his then 17-year-old son J.G. The referral was based on allegations Father emotionally abused J.G. Father allegedly would get drunk and speak badly about J.G.'s mother in the minor's presence. Father also allegedly kicked the minor out of the house. The minor had no place to live because his mother lived in Texas. The child and his older sibling were considered at risk during the investigation. However, the referral was closed after the allegations were determined to be unfounded.

Father also had a criminal history of being charged with inflicting corporal injury on a spouse/cohabitant (Pen. Code, § 273.5) in October 1993 (a detention only) and July 1999 (a detention only, lack of sufficient evidence). As previously noted, Father was convicted of inflicting corporal injury on Mother in July 2012. The department attached to the jurisdiction/disposition report a copy of the three-year protective order restraining Father from contacting Mother. The criminal court also ordered Father to participate in and complete 52 weeks of domestic violence classes and attend AA meetings.

The department reported Father admitted engaging in a heated argument with Mother in July 2012. The argument resulted in Father "slapping [Mother] on the face." The report states Father minimized the situation and indicated he felt the department was exaggerating the circumstances. Father said he wanted to clarify that he never struck Mother with his fists. Rather, he "slapped" Mother on the face. Father said it was "an isolated incident." Father clarified that "slapping and hitting with [] closed fists were two separate actions." "Slapping is not as bad as hitting someone with [] closed fists." Father

7

stated, on the day of the incident, the child was home at the time. However, the child did not witness the incident. The child only learned about the incident when the police arrived. Father indicated that the incident occurred after he had a "bad day" and was having a severe headache. Father was also angry Mother and the child were not home when he returned from work. Father admitted he drank approximately three beers a day. Although Father enrolled in domestic violence and AA meetings as part of his criminal probation, he indicated he had not attended any because he had not been well.

Father was upset about the department's involvement with the family. He insisted that the department's involvement would cause him to lose his job. Father "could not understand" why the department would not dismiss the case as his attorney had suggested. The investigator explained that Father was not taking responsibility for his own behavior. Father stated, "Well it was an isolated incident. I had never hit my wife before and you guys can't let one mistake go." The investigator then reminded Father of prior incidents in other relationships. Father replied, "Yeah, but I was the victim in those other cases. I was only defending myself."

Mother also denied that the child was present during the July 2012 incident. According to Mother, in six years of marriage, it was the first time Father was physically aggressive towards her. Mother stated she did not recall whether Father "slapped her and or struck her on the face with his fists." However, she admitted he caused her to bleed. Mother stated she initially denied Father hit her but was aware his actions were wrong. Mother wanted Father to get help and also wanted to protect him from losing his job with the Los Angeles Police Department. Mother was also embarrassed her family learned about the incident. However, Mother admitted she had been in prior physically and verbally abusive relationships.

Both paternal and maternal grandmothers were "surprised to learn" Father hit Mother. Paternal Grandmother did not believe Father was capable of hitting a woman. Paternal Grandmother was home at the time of the incident. She heard the parents arguing and came out of her bedroom to ask them to stop. After she went back into her bedroom, the police arrived. Paternal Grandmother did not see Father hit Mother.

8

By October 2012, the child refused to make any statements regarding the incident or any other matters. The child refused to talk to the investigator and refused to leave maternal grandmother's side.

Although Father admitted drinking one to three beers a day, he did not think he had a drinking problem. Father stated his job as a detention officer was very stressful. Father worked four days and was off for three days. Father drank three beers a day on his days off. Father said he drank one beer in the evenings "to relax" on the days he worked. Father also drank to relieve pain from his severe headaches. Father stated he had about three beers on the night he hit Mother. Father did not believe drinking was a factor in his aggressiveness towards Mother. Father stated that when he drank, Paternal Grandmother was always there to watch the child. Father described himself as "a mellow drinker" whose "drinking does not affect [his] son at all."

Mother agreed with Father that he drank one to three beers almost every day. Mother denied Father would become intoxicated. Mother denied Father was ever left alone with the child. Mother confirmed that when she was not present, Paternal Grandmother watched the child. Mother stated she never left the child under Father's care when he had been drinking.

Paternal Grandmother initially denied Father drank almost daily. But, when confronted with Father's admission, Paternal Grandmother stated, "Yes, he does drink a lot." She added "[Father] needs help." Paternal Grandmother felt Father had a drinking problem that he refused to recognize. She said she admitted he had a drinking problem when she saw him drinking a beer in the mornings prior to eating breakfast. Paternal Grandmother stated she cared for the child while Father and Mother worked. She never left the child alone with Father because she knew Father could not take care of the child when Father was drinking.

Mother's ex-husband (M.A.) spoke with the investigator. Mother and M.A. have two children (ages 11 and 10). M.A. told the investigator that he had obtained a family law court order gaining primary custody of his two children with Mother. M.A. reported that one year prior to the incident, his two children were visiting Mother on a daily basis

9

at Father's home.  M.A.'s children reported seeing Father drink excessively.  His children reported seeing heated arguments between Mother and Father.  M.A.'s children refused to visit Mother and disclosed they were "scared" of Father.

Mother expressed a desire to reconcile with Father but wanted him to address the case issues.  Mother was willing to participate in couples counseling.  Mother was "somewhat angry" for Father's physically aggressive behavior.

Father was not visiting the child.  Father refused to visit the child at the department's office.  Father stated, "I'll just wait to see my son for the next six months."  Father stated he did not visit the child because the department would not allow the visits to take place in Father's home.

The department concluded the case was not appropriate for resolution without court intervention.  The department assessed the family as high risk for future abuse due to Father's history of having heated physical arguments with other partners, current violent behavior towards Mother, and unresolved drinking issues.  The department noted Father had not complied with either dependence or criminal court orders.  Father had not submitted to any juvenile court-ordered drug tests.  Father had admitted that he was not complying with the terms of his criminal probation requiring him to participate in and complete 52 weeks of domestic violence counseling and AA meetings.  The department recommended the juvenile court sustain the petition as alleged.  The department noted that Mother and Father minimized the situation and claimed it was isolated.  But Father had a prior history of physical altercations with other partners.  On September 12, 2012, Mother also admitted to department staff Father was aggressive and "hits" her.  Moreover, Father was arrested for and convicted of inflicting corporal injury on his spouse for the July 2012 incident.  The department felt Father was in complete denial of his violent actions towards Mother and his current alcohol abuse.  But he admitted drinking on a daily basis.  Paternal Grandmother stated Father had a drinking problem and needed help.

The matter was continued to December 19, 2012 for a contested hearing.  The department filed a last minute information for the court on December 17, 2012.  The

department reported that Mother was participating in domestic violence classes. Father was not participating in any services to address case related issues. Father had been reporting that he was going to enroll in an inpatient program to address his alcohol issues. Father had not provided proof of enrollment. Father was not submitting to drug testing. Father's speech was slurred during a telephone conversation with the investigator on December 12, 2012. When the investigator asked if Father was feeling well, Father said, "You guys are a piece of shit. You guys only destroy people's lives. I have no money to pay for any classes; you guys are making me lose my job. F**k You!" Father then ended the call.

The department filed a last minute information for the court on December 19, 2012 regarding Father's progress in his programs. Father was not participating in any programs. Father was terminated from his domestic violence program for unsatisfactory participation, poor attendance, and lack of cooperation. Father missed three drug tests and had one negative test.

Father and Mother testified at the contested hearing. Father testified that he "got into a disagreement" with Mother and "kind of slapped her with an open hand" on the side of her head. Mother fell onto the sofa where Father observed a little blood on her nose. Prior to striking Mother, Father had consumed "a couple of drinks, three beers." Father denied ever striking Mother prior to July 14, 2012. The child was in another room when Father struck Mother. When Father was not working, Father would drink six or seven beers on an average day in a three-hour period. On cross-examination, Father denied drinking beer in the morning prior to breakfast. Father denied having a history of drinking on his days off. Rather, it started when he was arrested for domestic battery. Father then testified that he had been drinking for "years" on his days off. He increased the amount he drank after he was arrested. Father thought he had been drinking too much on the day he struck Mother. Father did not show up for three drug tests because he was depressed. Father had not had a drink in two weeks.

11

When Father was drinking, the child would be with Paternal Grandmother. Father was never left alone with the child. Father denied that he was ever under the influence in the same room with the child. Father would drink and go to sleep.

Mother described the July 2012 incident as "a disagreement" where they were both "upset." When she "responded back to him," Father slapped her face. Father had never hit or touched her before this incident. When asked if Father had an alcohol problem, Mother replied that she did not "know what an alcohol problem is." Father did drink on his days off but not every day he was off work. The child was always with Paternal Grandmother. Mother admitted she lied to the police about the blood on her being ketchup. Mother also lied to the social worker and when she said she had been in an altercation with a woman. Mother said she was scared and it was the first thing that came to her mind.

Mother denied making statements to the police officers that Father "gets out of control" when he drinks. Mother did not tell police officers that Father was verbally abusive to her in the past. The child was in Paternal Grandmother's bedroom at the time of the incident. Mother planned to reconcile with Father.

After argument from counsel, the juvenile court stated that it believed there had been "a violent altercation" between Mother and Father on July 14, 2012. The juvenile court then stated: "I don't have one shred of evidence that it happened on any other occasion. I also don't have any evidence aside from what the child said later, after hearing everybody in the house talk about it, what happened to his mother and father. He was not present in the house. Also, I think that Father has a drinking problem. . . . I do believe he's a current abuser of alcohol. All right. I think he has an alcohol problem, and I think he needs help for it. I don't think it has endangered his son at all, because he's never been left alone with the child. I don't think the mother has done anything to jeopardize this child. . . . I don't think you had but the one occurrence of domestic violence between the two. I don't think the child was present in the room. I don't believe the child saw it. . . . I think the abuse of alcohol or the problem he has with alcohol is what caused the July 14 occasion."

12

The juvenile court then stated it was dismissing the domestic violence count because it was "an isolated instance." The child was not at risk because he was not in the room and did not see it. The juvenile court then sustained one count as to Father's alcohol abuse. The juvenile court found Father had a current alcohol problem, which rendered him incapable of providing regular care and supervision of the child. Because all the evidence suggested Father was never alone with the child, the juvenile court struck allegations that the child was endangered while in Father's care and supervision.

The juvenile court ordered the child to remain in Mother's home and removed him from Father's custody. The department was ordered to provide services to the family. Father was ordered to comply with probation terms from the criminal court matter. Father filed a timely appeal. The department filed a timely cross-appeal.

## DISCUSSION

### I. Jurisdictional Findings

Father claims jurisdiction was not proper because there was no evidence his alcohol abuse placed the child at a substantial risk of suffering physical harm or illness. The juvenile court's jurisdictional findings are reviewed for substantial evidence. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438; *In re P.A.* (2006) 144 Cal.App.4th 1339, 1344.) We review the determination in a light most favorable to the challenged order resolving all evidentiary conflicts in favor of the order. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450–451*; In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53.)

The primary purpose of dependency statutes is to protect children by safeguarding their physical and emotional well-being. (§ 300.2; *In re Nolan W.* (2009) 45 Cal.4th 1217, 1228; *T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 42–43.) Section 300.2 provides in that respect: "Notwithstanding any other provision of law, the purpose of the provisions of this chapter relating to dependent children is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm. This safety, protection, and physical and emotional well-being may include provision of a full array

13

of social and health services to help the child and family and to prevent reabuse of children.  The focus shall be on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child.  **The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child.  Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment.**  In addition, the provisions of this chapter ensuring the confidentiality of proceedings and records are intended to protect the privacy rights of the child."

The record is clear that Father abused alcohol on his days off work.  Moreover, he testified that he drank six or seven beers within a three-hour period.  Mother, though subsequently recanting, told police officers and a department investigator that Father's drinking made him aggressive and out of control.  Paternal Grandmother told the investigator father had a drinking problem.  She reached this conclusion after Father began drinking a beer prior to breakfast.  Furthermore, it is undisputed that Father had been drinking prior to striking Mother's face on July 14, 2012.  When police arrived at the home, the four-year-old child was crying and visibly upset.  The child told police officers that his "mommy" was bleeding and that Father did it.  The child also made gestures suggesting that the child understood that Father had hit Mother in the face causing her to bleed.  While much was made of whether the child was in the same room as Father and Mother, the fact remains that the child ultimately became aware of what Father had done to Mother.  Father also claims the child was not at risk because Father was never alone with the child.  Even so, Father's drinking caused him to become aggressive and violent enough to strike Mother in the face while the child was in the home.

Father also testified that his arrest had caused his drinking to escalate.  Father pled guilty to inflicting corporal punishment on a spouse.  Furthermore, as part of the criminal case, Father was ordered to attend AA meetings.  Father was ordered to participate in drug testing in the dependency matter.  Yet, there was no evidence Father was attempting

14

to comply with either criminal or juvenile court orders to address his alcohol problem. Father's unresolved alcohol abuse problem was a sufficient basis to assert jurisdiction over the child. (See, e.g., *In re Drake M.* (2012) 211 Cal.App.4th 754, 766–767 [a finding of substance abuse is prima facie evidence of parent's inability to provide regular care resulting in a substantial risk of physical harm for children of "tender years"]; *In re Alexis E., supra,* 171 Cal.App.4th at p. 453 [use of medical marijuana without more is not sufficient to support jurisdiction, but, evidence of negative effect on his demeanor towards children and others does support order].) Under the circumstances, there was overwhelming evidence that Father was not able to provide a five-year-old child with adequate care and supervision due to alcohol abuse.

## II.    Domestic Violence

The department claims the juvenile court erred in dismissing the domestic violence count under section 300, subdivision (b). The department requests that the order be reversed and the matter be remanded with instructions to sustain the domestic violence count to conform to proof. Conforming the count to the true findings made by the juvenile court would require striking allegations that: Father struck Mother on prior occasions; Mother failed to protect the child by allowing Father to remain in the child's home with unlimited access to the child; and Mother's failure to protect the child endangered the child.

The department is correct that the juvenile court erred in dismissing the domestic violence count under section 300, subdivision (b). This is because there is no evidence to support the juvenile court's determination that the child was not at risk of serious physical harm as a result of the domestic violence incident. Rather, the only evidence in this case is that there was a domestic violence incident in the home while the child was present. Domestic violence in the home while a child was present is sufficient to sustain a petition under section 300, subdivision (b). (§ 300, subd. (b); *In re Heather A.* (1996) 52 Cal.App.4th 183, 194.) Furthermore, Father pled guilty to inflicting corporal punishment on his spouse. (See *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562–-563

15

[domestic violence when children are in home is sufficient for jurisdiction even if prosecution fails to prove spousal abuse in a criminal court].)

Police were summoned to the home after Father struck Mother in the face. Paternal Grandmother, while claiming to always provide constant supervision of the child, indicated she was unaware of what had happened. Two adult siblings also claimed not to know what happened. The only person willing to admit there was domestic violence in the home on that day was the four-year-old child. The child gave a vivid description of what he thought had happened to Mother when police arrived at the home. Police officers found Mother locked in a bedroom because she was afraid of Father. Mother described Father as out of control. But, at the jurisdiction hearing, Mother testified that she intended to reunite with Father. Mother also periodically changed her story about what actually occurred on the evening in question. Mother even testified that she did not know what an alcohol problem was. Father admitted drinking on the day he struck Mother in the face. Father testified that he began to drink more after being arrested. Father had also lost his job and was depressed. More importantly, there was no evidence that Father had done anything to address either the dependency or criminal court ordered issues. Thus, the order dismissing the domestic violence count must be reversed because the only evidence was that the child remained at risk of physical harm due to unresolved domestic violence issues between the parents, who planned a reconciliation.

## III.    Removal from Father's Custody

Father is incorrect that there was no clear and convincing evidence the child should be removed from his physical custody and there were reasonable alternatives to removal, which would have protected the child. A dispositional order removing a child from a parent's custody is reviewed for substantial evidence under a clear and convincing evidentiary standard. (§ 361, subd. (c)(1); *In re Noe F.* (2013) 213 Cal.App.4th 358, 367; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)

We begin by noting that the juvenile court order dismissing the domestic violence count was erroneous. Father concedes in his opening brief that the domestic violence

16

coupled with Father's alcohol abuse justifies the removal order. Father claims, however, removal was unwarranted because he was never left alone with the child when he was drinking. According to him, Paternal Grandmother had and would continue to provide the necessary protection for the child if Father was drinking in the child's presence. But, Father's drinking caused him to be aggressive and violent with Mother even when Paternal Grandmother was in the home. Paternal Grandmother stated she had unsuccessfully tried to intervene in the verbal altercation between Father and Mother on the day in question. Thus, Paternal Grandmother's presence in the home had done nothing to stop Father from exposing the child to Father's alcohol-induced aggressive and violent behavior. Furthermore, Paternal Grandmother initially denied that Father even had a drinking problem. She only admitted he did after she was told Father admitted he had a problem.

In addition, Father admittedly drank on a daily basis when he was off work. At the time of the jurisdiction/disposition hearing, Father had lost his job. Father testified that he was drinking even more since he had been arrested and was unemployed. Moreover, the only evidence in the case was that Father failed to address any of the dependency issues including domestic violence and alcohol abuse. His refusal to do so, especially in light of the criminal conviction and court orders to address the same two issues, provides sufficient evidence that the removal order was warranted to protect the child.

## DISPOSITION

The jurisdictional and dispositional orders based on Father's alcohol abuse and removing the child from his custody are affirmed. The order dismissing the domestic violence count is reversed and remanded with directions to sustain the count with modifications to conform to proof.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

ASHMANN-GERST

_____

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18