Filed 7/3/14  In re M.F. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re M.F. et al., Persons Coming Under the Juvenile Court Law. | B250251 <br><br> (Los Angeles County Super. Ct. No. CK97049) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.F., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Annabelle G. Cortez, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel for Plaintiff and Respondent.

* * * * * *

1

This is an appeal from jurisdictional and dispositional orders entered against Jose F. (Father) pursuant to Welfare and Institutions Code,[1] section 300, concerning his three children, M.F., S.F., and A.F. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

On December 21, 2012, the Los Angeles County Department of Children and Family Services (the Department) filed a section 300 petition on behalf of M.F. (age 13), S.F. (age 12), A.F. (age five) and their two half siblings, C.S. (age two) and J.S. (two months). The petition alleged, among other things, that the children were at risk of physical harm because on prior occasions in 2012, their mother Jennifer F. (Mother) used inappropriate physical discipline on the child M.F., including pulling the child's hair and engaging in physical altercations with the child. Mother and her male companion, Tony S., engaged in physical altercations in front of the children. M.F. engaged in physical sibling rivalry with S.F. and A.F. and Mother should have reasonably known of the physical contact and failed to protect the younger children.

Tony S. is the biological father of C.S. and J.S. Neither Tony S. nor Mother are parties to this appeal.

The detention report stated a referral from the Child Protective Hotline on November 5, 2012, indicated that the reporting party noticed a "bump and bruise on the right side of M.F.'s eye just above the eye." M.F. said that Mother came home on November 2, 2012, and started to look for her phone. Mother came to M.F.'s room and saw her on M.F.'s phone. Mother, who thought M.F. was using Mother's phone, got on M.F.'s back and started hitting her with her hand. M.F. said it had been "hell" since the incident. Mother has been constantly cussing at her, calling her names and putting her down. M.F. stated she was afraid of what Mother was going to do when she found out M.F. reported the incident. Mother admitted wrestling with M.F. to get the phone and pulling her hair. Mother said she had pulled M.F.'s hair a couple of times before but not really hard.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

A second referral on November 6, 2012, concerned black and reddish bruising from a bite mark on S.F., who said she was injured when M.F. beat her up. S.F. had bruises on her lower back near the kidney area as a result of a prior unreported incident.

Mother reported that Tony S. was arrested after destroying some of M.F.'s personal belongings. He had picked up M.F.'s jewelry box and thrown it against the wall. He then pushed Mother out of the way. Mother denied physical abuse by Tony S. but said he had destroyed things in the past. "He destroyed the backyard and broke pots and stuff." Mother said she had a restraining order against Tony S., who was no longer living in the family home and had no contact with the children. M.F. said Tony S. would throw things around but would not hit the children or Mother. S.F. said Tony S. pushed Mother and destroyed things including the backyard. Tony S. did this in front of all of the children.

Mother and Tony S. had been living together for about three years. M.F. did not initially live with them and had been living with Father until he was arrested. Father was incarcerated for drug-related charges, including possession and sales. Mother indicated that there had been domestic violence issues with Father. When asked about Father, M.F. became teary-eyed. M.F. stated, "He is in jail. I think he is better off there. I saw him a year ago." M.F. reported she has been sad because of her parents' divorce. S.F. said Father used to hit her with a belt but he is now in jail. She was "really little though" and Mother would try to stop him. But, S.F. does not see him anymore.

On January 29, 2013, the petition was amended to add allegations Father has a history of abusing illicit drugs and has drug-related possession and sales arrests and convictions. Father was currently incarcerated on the charges and is unable to provide the children with appropriate care and supervision. Father's illicit drug abuse endangered the children's physical health and safety placing them at risk of physical harm. The juvenile court dismissed the original petition. Father denied the allegations.

In the jurisdiction/disposition report, the Department indicated that it had not been able to interview Father due to his incarceration. Mother was not talking to the Department or making the children available for interview on advice of counsel. The

3

Department attached "CLETs results" for Father which revealed arrests and/or convictions dating from 2006 through 2011 for drug-related offenses including: 2006 for possession of a controlled substance; 2010 for possession of a controlled substance; and 2011 for possession of controlled substance paraphernalia and sales of a controlled substance. Father's current incarceration was for convictions of drug-related charges.

Father's mother, paternal grandmother Rachel V., indicated that Father had a history of drug use and sales. She could not state the number of years he had been using drugs but said Father "is ready to change." Father was expected to be released in August 2013.

In a March 2013 supplemental report, the Department reported Mother had allowed the children to be interviewed. Father's children had not been able to visit him in prison because Mother needed to produce an original copy of the childrens' birth certificates. Paternal grandmother provided Father with pictures of the children. The Department recommended that the children continue to be released to Mother with family maintenance services, conditioned on Tony S. not residing in the home.

On May 2, 2013, prior to the adjudication of the amended petition, Father argued the petition should be dismissed as to him because there was no nexus between his incarceration and risk of harm to the children. Father argued that case law, including *In re Drake M.* (2012) 211 Cal.App.4th 754, supported his theory that the children were not at risk due to his drug-related offenses given that the children remained in their Mother's care. And, his incarceration had "nothing to do with [the Department's] getting involved in the case." M.F.'s counsel, as well as counsel for the other children, joined in Father's request for a dismissal of the allegations against Father.

The Department argued Father had a significant drug problem including two drug convictions in 2010 and a third drug conviction in 2011. Father's current incarceration was on drug-related charges for which he was sentenced to two years and eight months in December 2012. Father is scheduled to be released soon but there is no evidence he has received any drug treatment for his drug abuse, which resulted in multiple possession of controlled substances convictions. The children are placed at risk by exposure to Father,

4

who has regularly abused drugs in the past, when he is to be released from custody without appropriate treatment.

The juvenile court sustained the petition as amended under section 300, subdivisions (b) and (j), and declared the children dependents of the court. The children were ordered removed from the custody of Father and Tony S. and released to Mother's custody. In sustaining allegations against Father under section 300, subdivision (b), the court explained, "there is an unresolved history for [Father] which the court finds does provide a nexus to a current risk especially given [Father] is currently incarcerated for drug-related offenses and is unable to provide for the [children] as indicated in [the amended petition]." Father was ordered to participate in a full drug and alcohol program, including random drug and alcohol testing, individual counseling, parenting classes, and alcohol and drug counseling. Father's timely appeal followed.

## DISCUSSION

Father claims the Department failed to satisfy its burden of proof on any of the jurisdictional findings against him. We review the juvenile court's jurisdictional findings for substantial evidence. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438; *In re P.A.* (2006) 144 Cal.App.4th 1339, 1344; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1644.)

The Department argues and father concedes that the juvenile court's jurisdictional findings can be affirmed if any one of the bases for jurisdiction is supported by substantial evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451; *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) The juvenile court could declare jurisdiction over the children based on the actions of either parent. (§ 302, subd. (a); *In re Alysha S. supra*, 51 Cal.App.4th at p. 397; see also *In re Alexis H.* (2005) 132 Cal.App.4th 11, 16.)

The rationale for the rule is that the dependency law is based on protection of the children rather than punishment of the parent. (*In re Alexis E., supra*, 171 Cal.App.4th at p. 451; *In re Alysha S., supra*, 51 Cal.App.4th at p. 397.) "As a result of this focus on the child, it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] Once the child is found to be endangered in the manner described by one of

5

the subdivisions of section 300—e.g., a risk of serious physical harm (subds. (a) & (b)), serious emotional damage (subd. (c)), sexual or other abuse (subds. (d) & (e)), or abandonment (subd. (g)), among others—the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.] For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is '"good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent."' [Citation.]" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492; see also *In re P.A.* (2007) 155 Cal.App.4th 1197, 1212.) For that reason, the unchallenged jurisdictional findings against mother supports the order. (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202; *In re Shelley J.* (1998) 68 Cal.App.4th 322, 330.)

Father acknowledges that jurisdiction over the children will continue due to the unchallenged sustained counts against Mother. However, he claims the merits of his appeal should be considered because the findings against him could affect further dependency proceedings under standards articulated in *In re Drake M.*, *supra*, 211 Cal.App.4th at pages 762-763.

Father claims that the count was defective on its face because there was no nexus between his past substance abuse and present incarceration and risk to the children. The Department counters that Father forfeited the right to challenge the facial sufficiency of the amended section 300 petition by failing to file a demurrer. We agree with Father that the record shows that he did challenge the pleading as defective on its face. We further find Father is correct that there is authority which supports the conclusion that the issue is not waived by failure to file a demurrer. (See *In re Alysha S., supra,* 51 Cal.App.4th at p. 397.)

6

Father asserts that his "unrelated run-ins with the law *alone* do not establish a reason for state interference" making him an offending parent. He claims that paternal grandmother's statement that father was "a changed man" established there was no risk to the children from his past behavior. We note that the cases relied on by Father to support his claim that substance abuse "alone" is insufficient to jurisdiction do not involve substance abuse "plus incarceration." (See *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 [ parent's use of marijuana without more is insufficient to support jurisdiction]; *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 764 [usage of medical marijuana without a showing of substance abuse is insufficient to support finding of failure to supervise or protect]; *In re Alexis E., supra,* 171 Cal.App.4th at pp. 452-453 [mere use of marijuana by a parent does not support a finding of risk but risk was not speculative where there was a risk to the children of negative effects of secondhand smoke]; *In re David M.* (2005) 134 Cal.App.4th 822, 829-830 [mother's continued substance abuse of marijuana without more did not support finding of risk].) Furthermore, the record actually indicates paternal grandmother stated Father is "ready to change"-- not that he *had* changed. However, there is absolutely no evidence in the record to show what, if anything, Father has done to address his drug-related issues, which resulted in his incarceration.

In any event, the findings against Father are supported by substantial evidence. Subdivision (b) applies when a child has suffered or is at risk of suffering serious physical harm due to the parent's failure or inability to adequately supervise or protect the child; or, it applies when the parent fails to or lacks the ability to provide adequate regular care for the child due to substance abuse.[2] The undisputed evidence shows that Father has a history of drug abuse. He has a criminal history of arrests dating back to 2006. Father had drug possession charges in 2010 and 2011. At the time the family came to the court's attention, Father was incarcerated on drug-related offenses. Prior to Father's arrest, M.F. was residing with Father. When Father was arrested, she began living with Mother and Tony S., the latter of whom was arrested for domestic violence.

[2]      We do not address Father's arguments related to findings under section 300, subdivision (g), because the juvenile court did not sustain the petition on this ground.

7

Mother and M.F. were in a physical altercation with each other and M.F. became involved in physical altercations with her younger siblings. Father's incarceration, which occurred as a result of drug-related charges, made him unable to provide regular care and protection to the children, who have been found at risk of physical harm even though the children reside with Mother. Here, in sustaining the petition against Father, the juvenile court expressly assessed the risk of harm to the children based on the Father's drug abuse history and his incarceration for drug-related charges. "The state, having substantial interests in preventing the consequences caused by a perceived danger is not helpless to act until that danger has matured into certainty. Reasonable apprehension stands as an accepted basis for the exercise of state power." (*In re Eric B.* (1987) 189 Cal.App.3d 996, 1003.) The juvenile court could reasonably conclude that there indeed was a nexus between Father's unresolved drug-related issues, which resulted in his incarceration, and a risk of injury to the children.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *

FERNS

We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8