Filed 9/22/15  In re Isabella D. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ISABELLA D. et al., Persons Coming Under the Juvenile Court Law. | B261322 |
| | (Los Angeles County Super. Ct. No. DK05312) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ALLEN D., | |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Appellant Allen D. (father) challenges the dependency court's jurisdictional findings under Welfare and Institutions Code[1] section 300, subdivisions (b) and (d) with respect to his four-year-old daughter, Isabella D., and two-year-old son, Allen D., Jr. The evidence showed that father approached his 11-year-old stepdaughter wearing only his underwear, offered to pay her $8.00 to consume an alcoholic beverage, then lay down on a bed next to the minor and told her to touch his penis, all while the two dependent children were watching television in an adjoining room. Father attributed his misconduct to the influence of alcohol. Though father does not challenge many of the sustained grounds for dependency jurisdiction, he nevertheless argues the evidence was insufficient to find a danger that he would sexually abuse his biological children or that his abuse of alcohol posed a risk to the children's physical or mental well-being. Father also argues the evidence was insufficient to remove the dependent children from his physical custody. We reject these contentions and affirm.

## FACTS AND PROCEDUREAL BACKGROUND

On May 5, 2014, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging father became intoxicated and tried to make his stepdaughter grab his penis. The Department later learned the alleged victim was father's 11-year-old stepdaughter Mia.

In her interview with a Department social worker the day after the report, Mia disclosed the incident occurred at the two-bedroom home father shared with Mia's mother and their two children, four-year-old Isabella and two-year-old Allen. Mia, who lived with her biological father, had been at the home to babysit her half-siblings while mother was at work. Immediately before the incident, Mia reported that Isabella and Allen were watching television in mother's room and father was in the kitchen making a drink. After preparing the drink, father approached Mia and offered her $8.00 to drink some of it. Unsuspecting, Mia took a sip of the drink, which she observed father make

2

with "some juices," but spit it out because it tasted " 'funny.' " She then went to the other bedroom to lay down. Moments later, father came into the bedroom wearing only his underwear and lay down on the bed next to her. He then told her to "give him a ' hand job.' " Mia refused the demand and ran into the bathroom, locked the door and sent a text message to her mother. Mother contacted her older daughter (father's other stepdaughter), Chloe, and instructed Chloe to go to the house immediately to retrieve Mia and the two younger children. Mother then rushed home from her work in a neighboring city.

Mother took father to the Veteran's Administration Hospital the day after the incident to seek services for him. Mother reported that father served in the military during the Iraq war and had never received counseling after returning home. She said he sometimes became very upset when they argued, but she never thought he would sexually proposition Mia. Mother confirmed that she had not allowed Isabella or Allen to be alone with father since the incident. Mia had no further contact with father and no longer babysat the children at mother's home.

In his interview with the Department, father largely admitted to the details of the incident as related by Mia. He confirmed that he had consumed alcohol before sexually propositioning Mia, and described the incident as a " 'dumb mistake,' " noting " 'I have no history of such behavior.' " Father denied having an alcohol problem, yet maintained that his intoxication significantly influenced his misconduct. Father said he was unaware of any mental health problems, but also said he had not received a psychological evaluation when he returned from the Iraq war. Father apologized for his misconduct and acknowledged it was very wrong. He denied having sexually abused any other children.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

Father agreed to a safety plan that required him to move out of the home. He said he intended to cooperate with the Department and confirmed that he and mother went to the hospital to initiate treatment.

After detaining Isabella and Allen from father, the Department filed a petition alleging the children were dependents as described in section 300, subdivisions (b), (d) and (j). The petition alleged that father sexually abused Mia and this misconduct demonstrated that Mia's younger half-siblings, Isabella and Allen, were at risk of harm, both from father's direct mistreatment and his inability to adequately care for the children. The petition also alleged that father abused alcohol and created a detrimental home environment by giving alcohol to Mia.

In advance of the jurisdiction and disposition hearing, the Department reported that father had completed a parenting class through the National Council on Alcohol and Drug Dependency; however, father was no longer enrolled in psychiatric counseling. Father informed the Department that he had been receiving psychiatric services through the Veterans Administration, but he stopped because the location was too far from his home. The Department also reported that mother had, on at least one occasion, permitted father to visit the children at the family home in violation of the court's prior order.

On November 19, 2014, the court held the combined jurisdiction and disposition hearing. The court admitted the Department's reports into evidence; father did not submit any evidence.

Father's counsel asked the court to sustain the count under section 300, subdivision (b) alleging that father's sexual abuse of Mia posed a risk of general neglect to the younger children, and a similar count under section 300, subdivision (j). However, counsel maintained that the evidence did not support the allegation under section 300, subdivision (d) that father posed a danger of sexual abuse to Isabella and Allen. Counsel also asked the court to dismiss the separate count under section 300, subdivision (b) alleging father's abuse of alcohol endangered the children.

4

The court sustained the counts to which father submitted, as well as the counts that he challenged. The court declared Allen and Isabella dependents and also found, by clear and convincing evidence, that returning the children to father's physical custody would pose a significant danger to their physical and mental health. The court ordered family maintenance services for mother, and ordered father to participate in alcohol testing, an alcohol treatment program, individual counseling, and sexual abuse counseling for perpetrators.

## DISCUSSION

1.      *Substantial Evidence Supports the Challenged Jurisdictional Findings*

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citation.]" [Citation.]' " (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

As a general rule, " '[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*I.J., supra,* 56 Cal.4th at p. 773.) Here, father does not challenge the dependency court's jurisdictional findings under section 300, subdivision (j) or two of the

5

three counts under section 300, subdivision (b).  Accordingly, we could affirm the judgment on the bases of those counts without reaching father's challenges to the risk of sexual abuse finding under section 300, subdivision (d) or alcohol abuse finding under section 300, subdivision (b).  Be that as it may, we have no trouble concluding the court's findings with respect to these counts were supported by the evidence.

Section 300, subdivision (d) authorizes jurisdiction where there is evidence of " a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household."  As relevant here, Penal Code section 11165.1 defines " 'Sexual assault' " to include "child molestation" as set forth in Penal Code section 647.6.  "Penal Code section 647.6, subdivision (a)(1) is violated when a defendant engages in the requisite annoying or offensive conduct, motivated by an unnatural or abnormal sexual interest in a specific child or children generally."  (*People v. Phillips* (2010) 188 Cal.App.4th 1383, 1388.)

Father does not deny that his conduct toward Mia constituted sexual abuse and child molestation as defined by the foregoing statutes.  He nevertheless argues the conduct is insufficient to infer a risk that he might engage in the same misconduct with his biological children.  We disagree.

As this court observed in *In re P.A.* (2006) 144 Cal.App.4th 1339 (*P.A.)*, "aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior."  (*Id.,* at p. 1347; see also *I.J., supra,* 56 Cal.4th at pp. 775-776 [discussing *P.A.* with approval]; *In re Ricky T.* (2013) 214 Cal.App.4th 515, 523 (*Ricky T.*) [same].)  Though Mia was not father's biological child, the evidence was that father had been in a relationship with mother for five years, and stood in a parental role toward Mia since she was just six years old.  Father's contention that the sexual molestation of his stepdaughter is irrelevant to the dependency court's assessment of whether he poses the same risk to his biological children "is contrary to the holdings and language of the cases that suggest sexual abuse of one child in the household puts at risk other children in the household."  (*Los Angeles County Dept. of Children & Family Services v. Superior*

6

*Court* (2013) 215 Cal.App.4th 962, 970 [observing this holding is "categorically state[d]" by the relevant cases].)

The fact that Isabella and Alan were present in the home when father molested Mia lends further support to the dependency court's section 300, subdivision (d) finding. As this court observed in *Ricky T.*, "Sexual abuse of other children in [the biological child's] presence would also constitute annoying or molesting [the child] within the meaning of Penal Code section 647.6." (*Ricky T., supra,* 214 Cal.App.4th at p. 523.) In that case, we held that a grandfather's sexual abuse of his step-granddaughter at home placed his three-year-old grandson at risk of harm under section 300, subdivision (d). Cognizant of the various forms molestation can take, this court reasoned that, "[g]iven that [the step-granddaughter] stated [the grandfather] also abused her in his home, the juvenile court reasonably could conclude [the grandson] was at risk of being exposed to [the grandfather's] sexual abuse of other children in [the grandson's] presence even if [the grandson] were not at risk of being touched inappropriately by [the grandfather]." (*Ricky T.,* at p. 523.) The same reasoning applies in this case given the fact that father sexually propositioned Mia when she was babysitting his two younger children who were just a room away.

As for the alcohol abuse finding, substantial evidence likewise supports the court's conclusion that father is a current abuser of alcohol and this abuse renders him incapable of adequately supervising or protecting his children as specified in section 300, subdivision (b). While father points to evidence suggesting he has no history of alcohol abuse, he also maintains that alcohol intoxication was a significant cause of his sexual abuse of Mia. In father's words, sexually propositioning his 11-year-old stepdaughter was a " 'dumb mistake' " he made while he was " 'not normal[,] but under the influence of alcohol.' " Add to this the evidence that father apparently attempted to coerce Mia to perform the sexual act by offering her money to drink alcohol, while she was babysitting Isabella and Alan, and the dependency court was more than justified in finding that father's abuse of alcohol rendered him incapable of adequately caring for these very young children.

7

2.      *Substantial Evidence Supports the Disposition Order*

Father contends a "formal removal order" was unnecessary because father had cooperated with the Department's demands concerning the children's protection, including the Department's request that father move out of the family home before a dependency petition was filed. Father also contends his misconduct toward Mia was "isolated in nature" and argues the court's finding that he posed an ongoing danger to his biological children was necessarily based on speculation. We disagree.

Before a dependent child may be taken from the physical custody of a parent, section 361, subdivision (c)(1) requires the juvenile court to find "clear and convincing evidence" of "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the [parent's] physical custody." Notwithstanding section 361's heightened proof requirement, "on appeal, the substantial evidence test applies to determine the existence of the clear and convincing standard of proof, the same as in other cases." (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1038.) Thus, we review the disposition order for substantial evidence, drawing all reasonable inferences from the evidence to support the order, without reweighing the evidence or exercising independent judgment. (*I.J., supra,* 56 Cal.4th at p. 773.) Our task is simply to determine whether it was reasonable for the dependency court to issue the removal order based on the evidence in the record.

We acknowledge father has largely cooperated with the Department's efforts to protect Isabella and Allen; however, in light of the seriousness of father's misconduct, the dependency court was not compelled to conclude that these very young children should be returned to father's physical custody. The dependency court's concerns were not limited to the prospect that father might sexually abuse his younger children; rather, the court's concerns also properly extended to the lack of responsible parental judgment inherent in father's severe misconduct, and the risk that this lack of judgment posed to his children's physical and emotional well-being. In this regard, it is especially significant

8

that father attempted to intoxicate Mia and sexually abused her while she was charged with babysitting four-year-old Isabella and two-year-old Allen, who were left alone and unsupervised in an adjoining bedroom. The fact that father also intoxicated himself when his children were in this vulnerable position could not have been reassuring to the dependency court in assessing whether returning Isabella and Allen to father's physical custody would be safe.

As for father's contention that his misconduct was "isolated in nature," the Department reasonably points out that this was wholly due to Mia's mature response to father's sexual misconduct. Furthermore, though father had completed a parenting class in advance of the disposition hearing, he had discontinued psychiatric counseling, and had not participated in services directed at perpetrators of sexual abuse. Based on this record, it was not unreasonable for the dependency court to conclude that the underlying causes of father's misconduct had not been adequately addressed or resolved and that returning Isabella and Allen to father's physical custody still posed a substantial danger to their physical and mental well-being.

## DISPOSITION

The judgment and disposition order are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




                                                                                     KITCHING, J.

We concur:




EDMON, P. J.




ALDRICH, J.